UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GREENFLY AMERICA, INC.,<br><br>                    Plaintiff,<br><br>       v.<br><br>ATHOC, INC.,<br><br>                    Defendant. | Case No.<br><br>COMPLAINT FOR PATENT INFRINGEMENT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Greenfly America, Inc. ("Greenfly") demands a jury trial and complains against Defendant AtHoc, Inc. ("AtHoc"), and states as follows:

## THE PARTIES

1.      Greenfly is a corporation organized and existing under the laws of the State of Nebraska, conducting business in this judicial district.

2.      On information and belief, and based on the records of the Delaware Secretary of State, AtHoc is a Delaware corporation with its headquarters located at 2988 Campus Drive, Suite 100, San Mateo, California 94403.  AtHoc has four regional offices, including one located in Omaha, Nebraska.  AtHoc conducts business in this judicial district.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States of America, Title 35 of the United States Code.  This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a).

4.      Greenfly is informed and believes, and based thereon alleges, that AtHoc is doing business and committing acts of infringement of the patent identified below in this judicial district, and is subject to personal jurisdiction in this judicial district.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## THE PATENT

6. On January 29, 2013, U.S. Patent No. 8,364,770 ("the '770 Patent") was duly and legally issued to Greenfly, naming David J. Ladouceur and Michael J. Tracy ("the Inventors") as the inventors. The '770 Patent claims an invention entitled "Heterogeneous Network Delivery of Electronic Messages In Accordance With Privacy and Personalization Criteria." On August 23, 2010, the Inventors assigned all rights, title, and interest in and to the '770 Patent to Greenfly. A copy of the '770 Patent is attached to this Complaint as Exhibit 1.

7. The '770 Patent is directed to a novel method of delivering electronic messages on disparate communications networks. The '770 Patent is directed to a system that involves social fabric templates that characterize the structure of a group, including information about roles, permissions, and transaction rules.

8. Claim 1 of the '770 Patent claims a method for delivering electronic messages using the social fabric templates to create an action list. Because the social fabrics contain information about roles, permissions, and transactions rules, a sender is able to target messages using this fabric information. Each member of the group has the ability to specify communication preferences for receiving messages sent through the method. The system then executes the action list by sending the messages.

9. Claim 2 of the '770 Patent is directed to the same method as Claim 1 with the added ability to provide authentication operations.

10. Claim 3 of the '770 Patent is directed to the same method as Claim 1 with the added requirement for opt-in membership settings.

11. Claim 4 of the '770 Patent is directed to the same method as Claim 1 with the added requirement of the system processing location related data.

12. Claim 5 of the '770 Patent is directed to the same method as Claim 4 with the added requirement that the system tailor an electronic message based upon location related data.

13. Claim 6 of the '770 Patent is directed to the same method as Claim 1 with the added requirement that the system process movement information for the message recipients.

14. Claim 7 of the '770 Patent is directed to the same method as Claim 6 with the added requirement that the system tailor an electronic message based upon the message recipient movement data.

15. Greenfly sought to commercialize the invention claimed by the '770 Patent and obtained favorable feedback about the invention from various potential clients. In spite of the favorable reviews, Greenfly was unable to obtain the investment capital necessary to build the network infrastructure required to operate the invention.

16. Greenfly's investigation led it to conclude that numerous market participants are now offering communication networks that perform the functions claimed by the '770 Patent using their preexisting networks. The presence of these more established market participants offering infringing products and services prevented Greenfly from successfully entering the market.

## ATHOC'S INFRINGING SYSTEM

17. AtHoc is a global leader in providing networked crisis communication systems to end users. It "enables organizations to communicate with their people through numerous devices, and empowers organizations to create their own permission-based network to establish

3

interoperable communication with other organizations in their community." *See* AtHoc, About Us, http://www.athoc.com/company/about-us.html (last visited Dec. 2, 2015).

18. AtHoc provides the functionality to its clients through a platform known as its Networked Crisis Communication Suite. The Networked Crisis Communication Suite is a system that is specifically tailored to allow users to send electronic communications to various electronic devices based upon templates that include information about the roles, permissions, and transaction rules for individuals and organizations. *See, e.g.*, The AtHoc Suite: Making The World Safer Brochure ("AtHoc Brochure") at 2, http://www.athoc.com/resource-files/download-file.html?path=brochures%2FAtHocProductBrochure.pdf (stating that the Networked Crisis Communication Suite allows users to "streamline [their] communication from pre-configured templates and custom fields, to geolocation targeting, teleconferencing and many more").

19. Among other things, the system allows for targeting based on user's roles. *See* AtHoc Brochure at 3 (stating that messages can be targeted to groups); Network-Centric Emergency Mass Notification Datasheet ("AtHoc Datasheet") at 4, http://www.athoc.com/resource-files/download-file.html?path=datasheets%2FAtHocAlert Datasheet.pdf ("AtHoc can target people based on organizational structure, distribution lists, physical location, individual name or dynamic database query. . . . Dynamic targeting can be accomplished by using a combination of attributes such as individual, role, location or IP address.").

20. AtHoc's system also limits access based upon the "permission" for the user seeking to access the system. *See, e.g.,* AtHoc Datasheet at 5 ("AtHoc also includes a permissions management system that controls operator access rights to scenarios, contact

4

information and device types."); *see also id.* at 2 (stating that the system includes "operator access policies").

21. AtHoc's system delivers messages "to virtually any device with real-time speed and assured reach." AtHoc Brochure at 2. The system can send messages (tailored to each device) through networked computers, networked IP phone displays, telephones, text messaging devices, mobile devices, e-mail, social networks, and various other communication methods. *See* AtHoc Datasheet at 3.

22. AtHoc's system includes "authentication and encryption" to ensure secure communications. AtHoc Datasheet at 6.

23. AtHoc's system is designed to allow users to set their own communications preferences. *See* AtHoc Datasheet at 5.

24. AtHoc's system utilizes user's locations and movements and allows for targeted messages based on this data. *See* AtHoc Brochure at 2 (noting that the system allows for transfer of "geo-sensed 'duress'" and provides "location tracking" that can be shared with the user's team or operation center), 3 ("Activate real-time tracking on smartphone to give operations your location as you move"), 3 (noting that the system can be used to recall personnel or conduct daily mustering).

25. On information and belief, AtHoc has tested its system on an ongoing basis to ensure proper performance and has demonstrated the use of the system for prospective customers. *See* AtHoc, Contact Us, http://www.athoc.com/company/contact-us.html?action=demo (last visited Dec. 2, 2015) (webpage at which potential customers can request product demonstration).

5

26. Upon information and belief based upon AtHoc's public statements, AtHoc has delivered its systems to some of the largest corporations and organizations in the world, including Microsoft, Kaiser Permanente Healthcare, Eastman Chemical, UCLA, the American Red Cross, Raytheon, and Boeing. *See, e.g.*, AtHoc, About Us, http://www.athoc.com/company/about-us.html (last visited Dec. 2, 2015).

27. AtHoc provides resources that, among other things, contain instructions on best practices for implementing a network crisis communications system. *See generally* AtHoc, Resource Library, http://www.athoc.com/customers/resource-library.html (last visited Dec. 2, 2015) (providing whitepapers, datasheets, case studies, and videos).

28. Upon information and belief, AtHoc provides instruction directly to its customers on the implementation and use of its Network Crisis Communication Suite, including instructions regarding how to use each of the features claimed by the '770 Patent. Such instruction is standard in the industry. Moreover, AtHoc provides a Customer Support Portal to its customers, which provides access to online training. *See* AtHoc, Customer Support Portal, https://support.athoc.com/customer-support-portal/login.html (last visited Dec. 2, 2015).

29. AtHoc's customers use its systems to deliver electronic messages in the manner set forth in the '770 Patent. Based on the nature of AtHoc's system and the case studies set out on AtHoc's website, these end users are utilizing AtHoc's systems to perform the methods claimed by the '770 Patent.

## ATHOC IS AWARE OF THE '770 PATENT

30. On or about January 30, 2015, Greenfly sent a notice letter along with a copy of the '770 Patent to AtHoc's General Counsel.

31. The notice letter informed AtHoc of the '770 Patent, identified AtHoc's alert system as related to the method claimed by the '770 Patent, and offered to engage in a discussion about a potential license of the '770 Patent.

32. Greenfly is informed and believes and, based thereon, alleges that AtHoc investigated the '770 Patent upon receipt of the letter.

33. Regardless of its actual actions, AtHoc should have investigated the '770 Patent upon receipt of the notice letter and become aware that the Networked Crisis Communication Suite infringes the '770 Patent.

34. Greenfly never received a response to its notice letter.

35. AtHoc has continued to offer its Networked Crisis Communication Suite to users since becoming aware of the '770 Patent.

## COUNT I
## DIRECT INFRINGEMENT

36. Greenfly repeats and incorporates herein the entirety of the allegations contained in paragraphs 1 through 35 above.

37. As a result of making, using, testing, marketing, and selling the Networked Crisis Communication Suite, AtHoc has directly infringed Claims 1 through 7 of the '770 Patent literally and/or under the doctrine of equivalents. As set forth *supra* Paragraphs 17 through 29, the Networked Crisis Communication Suite is specifically designed to perform each and every step set forth in Claims 1 through 7 of the '770 Patent and each use of the system will result in infringement of at least one claim of the '770 Patent.

38. AtHoc has willfully infringed Claims 1 through 7 of the '770 Patent by directly infringing the patent with knowledge of the patent and in spite of an objectively high likelihood that its actions constituted infringement of the '770 Patent.

39. Greenfly has suffered damages as a result of AtHoc's direct infringement of the '770 Patent.

## COUNT II
## INDIRECT INFRINGEMENT

40. Greenfly repeats and incorporates herein the entirety of the allegations contained in paragraphs 1 through 39 above.

41. AtHoc's Network Crisis Communication Suite is particularly adapted for use in a manner that infringes Claims 1 through 7 of the '770 Patent. Specifically, as alleged *supra*, AtHoc's product suite is designed to allow users to send messages based upon templates to users via multiple communication avenues. The products are further designed to include authentication, to provide message recipients with control over their communication preferences, to process location and movement data, and to tailor messages based on location and movement data.

42. AtHoc has been aware of the '770 Patent since at least on or around January 30, 2015, and was aware, or should have been aware, that the use of its system constitutes direct infringement of the '770 Patent.

43. In spite of its knowledge of the '770 Patent, AtHoc has continued to offer its Network Crisis Communication Suite to customers and has continued to instruct customers on how to use AtHoc's product in a manner that infringes Claims 1 through 7 of the '770 Patent.

44. Upon information and belief, at least one of AtHoc's customers has used the system in a manner that infringes the '770 Patent since AtHoc became aware of the '770 Patent.

45. AtHoc indirectly infringes Claims 1 through 7 of the '770 Patent by inducing others to use its Network Crisis Communication Suite in a manner that directly infringes the asserted claims. AtHoc provides its systems to some of the largest companies and organizations

8

in the world and instructs them on how to use the systems, including by instructing the use of each of the features claimed by the '770 Patent. AtHoc has induced these infringing uses with full knowledge of the '770 Patent and with full knowledge that the use of its Network Crisis Communication Suite as directed constitutes infringement of the '770 Patent.

46. AtHoc indirectly infringes Claims 1 through 7 of the '770 Patent by contributorily infringing the patent through the sale of its Network Crisis Communication Suite. Companies and organizations that purchase the Network Crisis Communication Suite directly infringe the '770 Patent through the use of the system. AtHoc sells its system and offers it for sale for use in performing the patented method. The Network Crisis Communication Suite is not a staple article of commerce and is not capable of substantial non-infringing uses. AtHoc has sold its system with full knowledge of the '770 Patent and with full knowledge that the use of its Network Crisis Communication Suite constitutes infringement of the '770 Patent.

47. Greenfly has suffered damages as a result of AtHoc's indirect infringement of the '770 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Greenfly prays for judgment against Defendant AtHoc on all the counts and for the following relief:

    A.    Declaration that Greenfly is the owner of the right to sue and to recover for infringement of the '770 Patent being asserted in this action;

    B.    Declaration that AtHoc has directly infringed, actively induced the infringement of, and/or contributorily infringed the '770 Patent;

    C.    Declaration that AtHoc and its customers are jointly or severally responsible for the damages from infringement of the '770 Patent through the use of the

  Networked Crisis Communication Suite;

D. Declaration that AtHoc is responsible jointly or severally with its customers for the damages caused by the infringement of the '770 Patent through the use of the Networked Crisis Communication Suite by AtHoc's customers;

E. An accounting for damages under 35 U.S.C. § 284 for infringement of the '770 Patent by AtHoc, and the award of damages so ascertained to Greenfly together with interest as provided by law;

G. Award of Greenfly's costs and expenses;

H. Award of Greenfly's attorney fees; and

I. Such other and further relief as this Court may deem proper, just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff Greenfly demands a trial by jury of all issues properly triable by jury in this action.

By: _____
James L. Zimmerman WBA #5-2450
ZIMMERMAN LAW FIRM P.C., L.L.O.
1615 Second Avenue
P.O. Box 700
Scottsbluff, NE 69363-0700
Telephone No. 308-630-0909
Facsimile No. 308-630-0932
Email: jlz@jlzlaw.com


Attorneys for Plaintiff Greenfly, Inc.


Dated: January 7, 2016